IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Design Basics, LLC,                                   Case No. 3:15CV666

        Plaintiff

        v.                                               **ORDER**

Forrester Wehrle Homes, Inc., et al.,

        Defendants

This is a copyright-infringement case.

Plaintiff Design Basics, LLC (DB), creates, markets, and licenses architectural plans for single-family homes. (Doc. 58 at ¶1). It contends that defendants – Forrester Wehrle Homes, Inc.; Wehrle Development, Ltd.; and their principals Jeffrey, Richard, and Joseph Wehrle (collectively, FWH) – infringed its copyrights in twenty-three architectural plans. (*Id.* at ¶¶35–36). The defendants allegedly did so by copying DB's plans, marketing the copied plans, creating unauthorized derivative works, and using DB's plans to build homes. (*Id.* at ¶¶44–59).

Pending is, *inter alia*, the defendants' motion for summary judgment on the issue of substantial similarity. (Doc. 82).

Because the parties disagree on the applicable legal standard, and because the parties' briefs are insufficient to permit me to determine whether there is a triable issue on the question of the works' substantial similarity, I issue this order: 1) setting forth the controlling law; and 2) directing the parties to file supplemental briefs.

**Discussion**

To prevail on an infringement claim, a copyright holder must establish that: 1) it owns a valid copyright in the work at issue; 2) the defendant copied its work; and 3) the copying was wrongful. *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003); *accord Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014).

The plaintiff can prove copying "with either direct evidence of copying," or, as DB attempts to do here, "through an inference of copying." *Robert L. Stark Enterprises, Inc. v. Neptune Designs Grp., LLC*, 2017 WL 1345195, *5 (N.D. Ohio) (Gaughan, J.).

To generate an inference of copying, the copyright owner must show "(1) access to the allegedly-infringed work by the [infringer] and (2) a substantial similarity between the two works at issue.'" *Id.* (quoting *Kohus*, *supra*, 328 F.3d at 853–54).

Because "[n]ot all copying . . . is copyright infringement," *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991), the plaintiff must establish that "the defendant's work is 'substantially similar' to protectible elements of the plaintiff's work," *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002). Thus "the term substantial similarity is properly reserved for similarity that exists between the protected elements of a work and another work." *Zalewski*, *supra*, 754 F.3d at 101.

"To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar." *Lennar Homes of Tex. Sales & Marketing, Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 933 (S.D. Tex. 2015); *see Kohus*, *supra*, 328 F.3d at 857 ("the

inquiry in the second prong of the substantial similarity test should focus on the intended audience," which "will ordinarily be the lay public") (internal emphasis omitted).

### A. Substantial Similarity, Architectural Works, and the Sixth Circuit

In *Kohus*, *supra*, 328 F.3d at 855, the Circuit adopted a two-step test to determine whether an original work and an alleged copy are substantially similar:

> [T]he first step requires identifying which aspects of the artist's work, if any, are protectible by copyright; the second involves determining whether the allegedly infringing work is substantially similar to protectible elements of the artist's work. We approve this method and adopt it.
>
> The essence of the first step is to filter out the unoriginal, unprotectible elements – elements that were not independently created by the inventor, and that possess no minimal degree of creativity – through a variety of analyses.

(Internal citations and quotation marks omitted).

The issue in *Tiseo Architects, Inc. v. B & B Pools Serv. & Supply Co.*, 495 F.3d 344, 345 (6th Cir. 2007), was whether the district court had "applied the wrong legal standard in reaching its conclusion that [the defendant's] design and construction drawings were not substantially similar to [the plaintiff's] design and site plan drawings."

After holding a bench trial, the district court in *Tiseo* found that the plaintiff failed to prove that "the architectural drawings at issue" were substantially similar. *Id.* at 346–47. According to the Sixth Circuit, the district court had, in setting forth its verdict:

> identifie[d] those unoriginal and uncreative parts of Tiseo Architects' work that are not protectable by copyright. Then, after extracting those unprotectable aspects of Tiseo Architects' drawings, the district court compared the remaining protectable elements to Olson's work, and found that they were not substantially similar.

*Id.* at 348.

In other words, the district court applied the two-step analysis from *Kohus*, *supra*, and the Sixth Circuit held that the court was correct to apply that test. *Id.* at 345 ("Because the district court properly analyzed the similarity of the works after filtering out the unprotectable elements of Tiseo Architects' drawings, the district court's judgment of the district court is affirmed."); *id.* at 348 (quoting from *Kohus*, *supra*, 328 F.3d at 855, at length).[1]

Contrary to DB's representation, the Sixth Circuit has "a clear and unequivocal method of analyzing substantial similarity for architectural works": the two-step filtration test that the court adopted in *Kohus* for infringement claims generally, and that the court applied in *Tiseo Architects* to architectural works specifically.[2]

**B. Supplemental Briefing**

I conclude, for two reasons, that it is necessary and desirable to have the parties submit supplemental briefs on the issue of substantial similarity.

First, I have now resolved the parties' dispute as to what standard of substantial similarity controls this dispute, but I do not have briefing from DB explaining why, under the *Kohus/Tiseo Architects* test, I should allow its claims to go to the jury. (DB did argue that its claims would survive

---

[1] I am disappointed that the parties neither cited nor, much less, and more importantly, discussed *Tiseo Architects.* Thus, I disregard, and need not discuss, their conflicting contentions as to the test for determining substantial similarity. There is case law in our Circuit on this issue, and it is, of course, controlling.

[2] District courts throughout the Sixth Circuit, moreover, have applied the *Kohus* test in copyright cases involving architectural works. *Design Basics, L.L.C. v. Petros Homes, Inc.*, 2017 WL 2842783, *2 (N.D. Ohio) (Parker, J.) (in which DB made, and Magistrate Judge Parker rejected – forty-five days before DB filed its opposition brief in this case – the same arguments *vis-a-vis* the absence of a controlling Sixth Circuit case re. substantial similarity); *Stark Enterprises*, *supra*, 2017 WL 1345195 at *5–7; *Dorchen/Martin Assocs., Inc. v. Brook of Boyne City, Inc.*, 2013 WL 5348627, *5 (E.D. Mich.); *Bruemmer v. Reardon*, 2012 WL 5989355, *4–7 (W.D. Mich.); *Frank Betz Assocs., Inc. v. Signature Homes, Inc.*, 2010 WL 1373268 (M.D. Tenn.)

4

summary judgment under *Kohus*, but its argument was perfunctory and conclusory. The firm contends that twenty-nine FWH designs or homes infringe twenty-three of its own designs, yet its argument in support of that position is barely two pages long.).

Second, the parties' original briefs do not, at least according to my understanding of the law, adequately home in on the protected level of expression, if any, in DB's architectural works.

For example, much of the report of defendants' expert, Richard Kraly, focuses on why certain constituent elements of DB's plans – "entry foyer two stories high," "gutters and downspouts at lower roof edges to collect and direct exterior water," and "breakfast area adjacent to the kitchen" – are not themselves original or copyrightable. (Doc. 109–1 at 29–30).

But I do not understand DB to be claiming a copyright in these kinds of standard features or elements, which the Copyright Act in any event excludes from protection. *See* 17 U.S.C. § 101. Rather, DB seems to claim copyright protection in the allegedly unique way in which it has arranged these kinds of elements in each of its home designs. Yet the defendants' briefs and supporting materials devote less attention to that question.

Furthermore, given the underdeveloped nature of DB's substantial similarity argument, its brief is of little assistance in gauging whether a reasonable jury could find that the defendants infringed its works.

Accordingly, the parties must file supplemental briefs on the question whether, viewing the evidence in the light most favorable to DB, a reasonable jury could find that FWH's design plans are substantially similar to DB's plans at the protected level of expression. The briefs must address the specific issues flagged at the end of this order. And in addressing those issues, the parties must apply the legal principles I set out below.

## 1. Protected Level of Expression in Architectural Works

According to the Copyright Act, an "architectural work" is "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. § 101.

Copyright protection can extend to "the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." *Id.* Nor does protection extend to the "standard configurations of spaces as well as common windows, doors, and other staple building components." *Lennar Homes*, *supra*, 117 F. Supp. 3d at 934 (internal quotation marks and citation omitted).

In this way, "the Copyright Act restricts which elements of architectural floor plans are protectable through its definition of a copyrightable 'architectural work.'" *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, 825 F.3d 1314, 1321 (11th Cir. 2016).

Accordingly, to resolve the defendants' motion on substantial similarity, I must identify the protected level of expression in DB's works by determining what elements of the works, if any, are entitled to copyright protection.

In trying to do so, I have found the most useful guidance in *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017); *Home Design Servs.*, *supra*, 825 F.3d 1314; *Zalewski*, *supra*, 754 F.3d 95; *Architects Collective v. Puciano & English, Inc.*, 247 F. Supp. 3d 1322 (N.D. Ga. 2017); and *Lennar Homes*, *supra*, 117 F. Supp. 3d 913.

These cases are useful and persuasive because they discuss, with specific reference to architectural works, the ways in which a court should filter out the unprotected elements of

expression and identify the protected level of expression. And though none of these cases comes from the Sixth Circuit, each applied a roughly analogous version of the *Kohus* test that controls here.

### 2. *Scenes a Faire* and Merger

First, these cases endorse the use of both the *scenes a faire* doctrine (*i.e.*, a scene that must be included in a work) and the doctrine of merger to "filter out" unprotected elements. As the Second Circuit explained in *Zalewski*, *supra*, 754 F.3d at 102:

> [T]he doctrine of *scenes-a-faire* teaches that elements of work that are indispensable, or at least standard, in the treatment of a given topic – like cowboys, bank robbers, and shootouts in stories of the American West – get no protection. Similarly, the merger doctrine instructs that some ideas can only be expressed in a limited number of ways – single words or colors for example. When expression is so limited, idea and expression "merge." Expressions merged with ideas cannot be protected, lest one author own the idea itself.

Accordingly, the parties should discuss how, if at all, these doctrines affect the amount of protected expression in DB's architectural works.

### 3. External Considerations

Second, the courts have also recognized that external considerations – that is, industry standards, consumer expectations, zoning requirements, and the like – can limit the amount of protected expression within architectural works. *Zalewski*, *supra*, 754 F.3d at 105. This is the case because, when an architect lets these considerations guide his or her work, the resulting design is a function of those requirements, rather than something original to the architect. *Cf. Tiseo Architects*, *supra*, 495 F.3d at 348 (many elements of architectural drawings were based on client's original sketches and were thus "unoriginal" and not copyrightable).

Therefore, the parties should discuss, with specific reference to the evidence in the record, the extent to which external considerations limit the amount of protected expression in the works at issue.

### 4. Overall Look and Feel, Plan Layouts, and Design Choices

The cases also recognize that, "while individual standard features and architectural elements classifiable as ideas are not themselves copyrightable, an architect's original combination or arrangement of such features *may* be." *Architects Collective*, *supra*, 247 F. Supp. 3d at 1342 (emphasis supplied).

But such combinations and arrangements are not always protected. For example, the court in *Lennar Homes*, *supra*, 117 F. Supp. 3d at 939–40, considered and ultimately accepted such an argument:

> Lennar's overall arrangement of spaces is itself an element Perry challenges as being unprotectable. Put another way, even considering the overall look and feel of Lennar's plans – the "protectable whole" – that overall look and feel is primarily a function of design choices Perry contends are unprotectable. As in *Zalewski*, the court can filter out those aspects of Lennar's overall designs that were influenced by external factors and determine the scope of protection in Lennar's plans.

*See also Architects Collective*, *supra*, 247 F. Supp. 3d at 1344 (recognizing that, in the Eleventh Circuit, "a general layout" for a so-called "four-three split" single-family home may not be copyrightable).

Accordingly, the parties should discuss the extent to which the overall look and feel of DB's plans, the layouts of the homes, or its selection, combination, or arrangement of standard, unprotected elements, constitutes protected expression.

8

### 5. The "Thin" Nature of Protection for Architectural Works

Finally, the three circuit court cases have concluded, for slightly different reasons, that creators of architectural designs for single-family homes have only "thin" protection in their copyrights. According to the Seventh Circuit in *Design Basics*, *supra*, 858 F.3d at 1101:

> The market for affordable home designs is crowded because opportunities for originality are tightly constrained by functional requirements, consumer demands, and the vast body of similar designs already available. In this field, the substantial similarity requirement is particularly hard to satisfy.
>
> * * *
>
> The challenge of proving substantial similarity is heightened where the field is crowded or where aesthetic choices may be secondary to consumer demands or functional requirements. The challenge is particularly acute in the market for affordable designs for single-family homes, where form follows function so closely. Blueprints drafted by companies like DB and Lexington are meant to appeal to home builders and buyers who want to build, sell, and buy homes that will hold their value. While it is possible to design a home that is a one-of-a-kind work of art, the home designs here do not fit that description. They comprise familiar configurations of spaces and features, having less in common with the work of Frank Gehry or Frank Lloyd Wright and more with that of William Levitt.

*See also Home Design Servs.*, *supra*, 825 F.3d at 1321 ("not every nook and cranny of an architectural floor plan enjoys copyright protection").

I make no finding in this regard, and I do not intend to work backwards from the idea that copyright protection for DB's work is "thin" by asking whether its plans fit within that thin zone of protection. I simply flag this issue so that the parties will be aware of my view that, given the many unprotected elements of architectural works generally, and the ways in which external considerations can dictate plan designs and layouts for single-family homes in particular, it may or may not be that the amount of protected expressions in any given design is rather slight.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. On or before December 15, 2017, FWH must file a supplemental brief on the question whether the evidence, viewed in the light most favorable to DB, would permit a reasonable jury to find that its works are substantially similar to DB's works at the protected level of expression.

**With regard to each and every design at issue**, the defendants' brief must: 1) identify what parts of DB's architectural work – the overall look and feel, the selection, composition, and arrangement of standard or unprotected elements, or other design choices and elements – amount to unprotected expression and to protected expression; 2) support such claims by citing to the record (**all citations must comply with Fed. R. Civ. P. 56(c)(1)**) and relevant case law; and 3) include a narrative, side-by-side comparison of each DB plan and FWH's allegedly infringing counterpart that explains why no ordinary observer (or no reasonable finder of fact) would find the works to be substantially similar at the protected level of expression.

2. On or before January 16, 2018, DB must file a supplemental brief on the question whether the evidence, viewed in its favor, would permit a reasonable jury to find that FWH's works are substantially similar to DB's works at the protected level of expression.

**With regard to each and every design at issue**, DB's brief must: 1) identify, with as much specificity as the record permits – **and by citing to the record in accordance with Fed. R. Civ. P. 56(c)(1)** – what parts of its architectural works amount to protected expression; 2) respond to the defendants' arguments that its architectural works, or parts or components thereof, are not protected expression; and 3) include a narrative, side-by-side comparison of each DB plan and FWH's

allegedly infringing counterpart that explains why an ordinary observer (or a reasonable finder of fact) could conclude that the works are substantially similar at the protected level of expression;

3. On or before February 1, 2018, FWH must submit a reply brief that addresses the arguments and statements of fact that DB made in its supplemental brief and that defendants did not adequately address in their opening supplemental brief;

4. Each side has offered opinion evidence (Kraly's report for FWH and Carl Cuozzo's declaration for DB) to establish that any copying did or did not involve protected expression. In preparing their submissions per this Order, the parties may not simply cut and paste, or incorporate by reference, the contents of Kraly's and Cuozzo's (very lengthy) reports into their supplemental briefs.

5. The parties' principal briefs may not exceed fifty double-spaced pages. The defendants' reply brief may not exceed twenty double-spaced pages.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge