**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**


Design Basics, LLC,                                    Case No. 3:15CV00666

                    Plaintiff,

          v.                                                    ORDER

Forrester Wehrle Homes, Inc., *et al.*

                    Defendants.


This is a copyright-infringement case.

Plaintiff Design Basics LLC, (DB), creates and licenses architectural plans for single-family homes. It accuses defendants, the home building companies Forrester Wehrle Homes, Inc., and Wehrle Development, Ltd. (collectively, FWH) of copying, manufacturing and selling "three-dimensional infringing copies (houses)" of its copyright-protected designs. (Doc. 89, ID 3488).

Three motions are pending.

First is plaintiff's motion for summary judgment regarding: the validity of the copyrights at issue; its ownership of the copyrights; and defendants' alleged access to the protected works. (Doc. 83). Second is plaintiff's motion to exclude defense expert John Gugliotta's report, which FWH cites in response to DB's summary-judgment arguments. (Doc. 84). Defendants oppose both motions. (Docs. 87, 88).

Third is defendants' objection to an affidavit submitted by plaintiff's counsel, James Rogers, "the materials attached thereto," combined with a motion to strike "Plaintiff's argument based thereon." (Doc. 100, ID 4103). Plaintiff opposes the motion. (Doc. 104).

For the reasons below, I grant plaintiff's motion to exclude Gugliotta's report in part, and deny it in part, overrule defendants' objection to Rogers' affidavit and deny their motion to strike plaintiff's "argument based thereon" in its entirety, and grant plaintiff's motion for summary judgment in part, and deny it in part.

## Number of Designs

Before reaching the substance of DB's copyright claims, I resolve a threshold matter: determining exactly how many copyrighted design plans are at issue. DB's conflicting positions make this task harder than it should be.

Relying on the second amended complaint (*see* Doc. 58), I noted in previous orders that DB accused FWH of infringing its copyrights in twenty-three architectural design plans. *See Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, (*Design Basics I*), 2017 WL 5467152 (N.D. Ohio); *Design Basics, Inc. v. Forrester Wehrle Homes, Inc.*, (*Design Basics II*), 2017 WL 5444569 (N.D. Ohio). They are: the "Kaiser," the "Kendall," the "Shannon," the "Sherburne," the "Newlin," the "Bermier," the "Tollefson," the "Monte Vista," the "Lancaster," the "Franklin," the "Harrisburg," the "Chandler," the "Galvin," the "Carrington," the "Paisley," the "Ambrose," the "Kincaid," the "Gabriel Bay," the "Tilmer's Run," the "Crimson Creek," the "Kirby Farms," the "Ashton" and the "Albany." (Doc. 58, ID 1222).

DB clarified that Counts I through VIII of its second amended complaint, alleging traditional copyright infringement claims, did not apply to the Ashton and Albany plans, which DB had licensed to FWH in 2014. (Doc. 58, ID 1226; Doc. 83-25, ID 3248).

Plaintiff did not, however, explicitly exclude the Ashton or the Albany from Count IX of the complaint, alleging a violation of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1201

*et seq.,* and claiming that defendants "intentionally removed and omitted DB's copyright . . . information from copies of DB's works"–an act that could violate the DMCA notwithstanding a valid license. *See* 17 U.S.C. § 1202(b)(1). I therefore inferred that Count IX included a claim related to these two designs–a supposition plaintiff later confirmed in its brief opposing defendants' motion for summary judgment on substantial similarity. (*See* Doc.118).

To succeed on a DMCA claim, however, a copyright holder still bears the burden of proving two of the elements essential to a traditional copyright infringement claim: (1) that it owns the copyright; and (2) that the defendant had access to it. *See* 17 U.S.C. § 1202(b)(1) ("No person shall, *without the authority of the copyright owner* or the law . . . intentionally remove or alter any copyright management information" (emphasis added)); *see also Granger v. Dethlefs*, 2014 WL 2475579, *6–7 (E.D. Pa.) (Plaintiff "cannot prove that Defendants violated the DMCA because if there is not enough evidence to show copyright ownership, it cannot be proved that any copyrighted material was altered or removed."); *Design Basics, LLC v. Lexington Homes, Inc.*, 2016 WL 8116897, *5 (E.D. Wis.) ("Without evidence of access to the copyrighted works, there is no genuine dispute of material fact as to whether Defendants intentionally removed copyright management information from the same copyrights as required for Plaintiffs to prove their claim under the [DMCA].").

And at present, DB does not move for summary judgment on its ownership of a copyright in, or defendants' access to, the Ashton or the Albany.

DB "moves for summary judgment on . . . Plaintiff's ownership of the valid copyrights in the 21 works at issue," rather than the twenty-three works it named in the second amended complaint. (Doc. 83-1, ID 2861 (emphasis omitted)). Plaintiff did not submit certificates of copyright

registration or deposit materials for the Ashton or the Albany as exhibits to its motion,[1] and did not include them among its list of the twenty-one designs "at issue." (*Id.* at 2860). Thus, to the extent DB had intended to raise any arguments concerning its ownership of, and FWH's access to, the Ashton or the Albany, plaintiff waived them by failing to discuss them in its principal summary-judgment brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

DB's counsel evidently caught this mistake when drafting plaintiff's reply. There, plaintiff asserts that it owns "valid copyrights in the *twenty-three* (23) architectural works at issue," and contends defendants had access to all of them, bringing the Ashton and the Albany back into the mix. (Doc. 98, ID 3751, 3768 (emphasis added)). That it cannot do.

A reply is a not a vehicle for DB to correct the omissions in its initial brief. *Hunt v. Big Lots, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007). "[R]eply briefs *reply* to arguments made in the response brief–they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." *Scottsdale*, 513 F.3d at 553 (quoting *NovoSteel SA v. Untied States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). "As a matter of litigation fairness and procedure, then," I treat issues raised for the first time on reply "as waived." *Id.* (quoting *NovoSteel*, 248 F.3d at 1274); *see also Hunt*, 244 F.R.D. at 397.

Accordingly, because plaintiff waived its arguments concerning the Ashton and the Albany, I deny DB's motion for summary judgment on ownership and access insofar as it relates to these designs.

---

[1]This is not to imply that DB had to register the Ashton or the Albany with the United States Copyright Office in order pursue a DMCA claim–a plaintiff's "failure to register its copyrighted work is not a bar to a DMCA action." *Gattoni v. Tibi, LLC*, 254 F. Supp.3d 659, 664 (S.D. N.Y. 2017) (citation omitted). I note only that, for the reasons explained *infra*, certificates of registration would have been sufficient to establish that DB owned copyrights in these designs.

Further, because I have already dismissed DB's claims concerning defendants' alleged infringement of plaintiff's Kincaid, Bermier, and Paisley designs (Doc. 129, ID 4950), my analysis herein concerns only the eighteen remaining designs still at issue.

**Gugliotta's Report**

A second threshold matter is whether, and to what extent, I may consider certain expert testimony in resolving plaintiff's arguments concerning validity, ownership, and access.

In an earlier order, I granted plaintiff's motion to exclude defense expert Richard Kraly's initial report insofar as it expressed legal opinions characterizing DB's designs as too unoriginal to warrant copyright protection. Defendants evidently assumed first, that I required witness advice on matters of copyright law, and second, that Kraly, an architect with no legal education or training, was somehow qualified to provide it. *See Design Basics I*, 2017 WL 5467152 at *4 (citation omitted).

This time, they rely on an actual attorney.

Specifically, in opposing DB's summary judgment motion, FWH offers an expert report penned by John Gugliotta, Esq., a lawyer defendants bill as "an expert in . . .copyright law." (Doc. 88-1, ID 3438).

"Admittedly," at the summary judgment stage, the "parties are not required to submit evidence . . . in a 'form that would be admissible at trial.'" *Shazor v. Prof. Transit Mgmt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). But their materials "must still comport with the rules of evidence"–including those governing expert testimony. *Id.*; *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to . . . cannot be presented in a form that would be admissible in evidence.").

I have already explained that "I have an independent 'gatekeeping' duty to ensure that expert

testimony is admissible under Fed. R. Evid. 702." *Design Basics I*, 2017 WL 5467152 at \*4 (citing *Kuhmo Tire v. Carmichael*, 526 U.S. 137, 147 (1999)). "That duty includes maintaining 'vigilant' guard against expert testimony that 'embraces actual legal conclusions.'" *Id.* (citation, brackets, and ellipsis omitted). "Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *United States v. Gordon*, 493 F. App'x 617, 626–27 (6th Cir. 2012) (citation omitted).

Gugliotta goes out of his way to do both.

First, Gugliotta opines that five of DB's designs are "ineligible for copyright protection as a matter of law" based on their dates of creation. As for the others, he explains that "Plaintiff does not have any claim of infringement for an architectural work" and "Plaintiff's allegations of copyright infringement . . . fail[] to sufficiently plead the nature of the copyrighted material." (Doc. 88-1, ID 3459-3465, 3468).

Gugliotta also repeats Kraly's assertion that DB's "works are not copyrightable because there are no original design elements present." (*Id.* at 3468 (citing Kraly report)). I previously excluded this portion of Kraly's report because Kraly's "belief that DB's designs do not merit copyright protection is a legal conclusion–and a subject on which I 'do not need the judgment of witnesses.'" *Design Basics I*, 2017 WL 5467152 at \*4 (quoting *Gordon*, *supra*, 493 F. App'x at 626). I now exclude this portion of Gugliotta's report for the same reason.[2]

"However," as I said with respect to Kraly's report, "the inclusion of such opinions does not

---

[2]In a declaration defending the report, Gugilotta insists that he "used headings in the report that reference the results of [his] legal analysis" merely as a "stylistic choice," and not to "set[] forth legal conclusions." (Doc. 88-1, ID 3435). Gugliotta's explanation underscores the very problem; his report should not include "legal analysis."

render [Gugliotta's] entire report and/or testimony inadmissible." *Id.* (citation and ellipsis omitted).

An individual with specialized knowledge may offer testimony or opinion as a lay witness so long as he has personal knowledge of the facts he discusses. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239–41 (6th Cir. 2010); *United States v. Wells*, 211 F.3d 988, 998 (6th Cir. 2000); *see also* Fed. R. Evid.701(a) (testimony "rationally based on the witness's perception" is lay testimony). Here, apart from his legal advocacy, Gugliotta recounts personally observable facts relevant to FWH's defenses, such as his claim that he "review[ed] the records" at the United States Copyright Office and "was unable to find any" proof that Design Basics, Inc. (plaintiff's predecessor in interest and the original copyright registrant) transferred ownership of its copyrights to DB. (Doc. 88-1, ID 3440).

Though Gugliotta cannot render a legal conclusion based on this fact, defense counsel can rely on it to dispute DB's assertion that it owns the copyrights originally registered to Design Basics, Inc. "The distinction, though subtle, is nonetheless important." *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994).

Accordingly, I disregard Gugliotta's legal conclusions, but consider the facts he relays to the extent that they bear on FWH's arguments regarding ownership, validity, and access.

**Rogers' Affidavit**

The final preliminary issue is FWH's objection to the affidavit of plaintiff's counsel, James Rogers, "the materials attached thereto," and its motion to strike "Plaintiff's argument based thereon." (Doc. 100, ID 4103).

In his affidavit, Rogers attests that in the course of discovery, defense counsel, Robert Stoffers, sent him the "original Design Basics plan books" in his "clients' possession" as of June 22,

2016. (Doc. 98-10, ID 3847). The affidavit and its exhibits do not state whether these "original Design Basics plan books" were in defendants' "possession" because FWH specifically ordered them, or received them through a more passive means, such as unsolicited advertisement. Other evidence in the record, however, shows that one of the defendant entities–Forrester Wehrle Homes, Inc.–ordered "Design Basics plan books" directly from Design Basics, Inc. in 1993, 1996, 2002 and 2003. (Doc. 83-25).[3]

Rogers attests that he "personally reviewed each page" of the plan books and "made a note of every page that had handwriting, paper clips, dog ear pages [i.e., folds at the upper corner], and any other physical alterations." (Doc. 98-10, ID 3848). He copied these pages and "drafted a document summarizing" their alterations. (*Id.*).

The "materials attached thereto" Rogers' affidavit include: (1) the letter from Stoffers stating that the "original Design Basics plan books" were in FWH's "possession"; (2) Rogers' copies of the altered pages; (3) Rogers' notes summarizing the alterations; and (4) a letter indicating that Rogers returned the plan books to Stoffers following his review. (Docs. 98-11, 98-12, 98-13, 98-14).

DB relies on Rogers' affidavit and these exhibits to demonstrate access–i.e., that one or more defendants saw or "ha[d] a reasonable opportunity" to see plaintiff's copyrighted designs "and thus ha[d] the opportunity to copy" them. *Jones v. Blige*, 558 F.3d 485, 491 (6th Cir. 2009) (citation omitted). This is the "argument based thereon" defendants move to strike as part of their evidentiary objection.

---

[3]DB's customer records are less than specific in identifying the precise number of DB plan books Forrester Wehrle Homes, Inc. purchased. Plaintiff alleges, however, that "Defendants have had access to at least 15 plan catalogues from DB since January 15, 1993, and FWH has licensed the 'Ashton' and 'Albany' plans from DB." (Doc. 58, ID 1226).

To that end, FWH contends that Rogers' affidavit is insufficient to authenticate his copies of the "original Design Basics plan book" pages. This is so, it argues, because Rogers lacks personal knowledge of "the DB books," including "their source, their creation, their retention, their content, or that they are what they purport to be." (Doc. 100, ID 4107). And although Stoffers signed the letter representing that the documents he produced were indeed "original Design Basics plan books . . . [then] in [his] clients' possession," (Doc. 98-11, ID 3849–50), he now insists that his representation is also insufficient to authenticate them, because he can "express nothing more than [his] belief that the papers are those described" in Rogers' discovery request. *Fisher v. United States*, 425 U.S. 391, 413 (1976).

But DB need not resort to Rogers' (or Stoffers') personal knowledge "to produce evidence sufficient to support a finding" that the plan book pages are what DB claims they are. *See* Fed. R. Evid. 901(a). Rather, as promotional materials "that contain a company logo," the Design Basics plan book pages are self-authenticating documents pursuant to Fed. R. Evid. 902(7). *Alexander v. CareSource*, 576 F.3d 551, 561 (6th Cir. 2009) (citing *Pass & Seymour, Inc. v. Hubbell, Inc.*, 532 F. Supp.2d 418, 438 (N.D. N.Y. 2007)).

For example, many of the plan book pages feature illustrations of homes in close proximity to a "Design Basics, Inc." logo, copyright symbol, or web address. Several plan book cover pages also declare that they are "published by Design Basics, Inc." (Doc. 98-15, ID 3883; Doc. 98-16, ID 3931; Doc. 98-18, ID 3935), or are "a Design Basics, Inc. Publication." (Doc. 98-14, ID 3860; Docs. 98-19, 98-20). One, in fact, identifies itself as a booklet of "Design Basics Home Plans." (Doc. 98-19, ID 3935). On top of that, a number of the plan book titles–"Gold Seal Home Plans," "Nostalgia Home Plans Volume II," and "Neighborhood in a Box"–are similar, if not identical to, the names of

the DB plan books Forrester Wehrle Homes, Inc., ordered from Design Basics, Inc. in years past. (*Compare* Docs. 98-15, 98-18, 98-20, *with* Doc. 83-25, ID 3245-46).

Because these documents bear "[a]n inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control," they require "no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902(7); *see also Alexander*, *supra*, 576 F.3d at 561.

Defendants alternatively contend that even if the plan book pages are admissible, the handwritten notations on the pages are not, because the "source(s)" of the marks, paper clips and dog ear folds "are not known,"(Doc. 106, ID 4348), and neither Rogers' affidavit, nor Stoffers' letter "demonstrates that the markings . . . were made by Defendants." (Doc. 100, ID 4110).

True enough. "But the fact that the author of the 'handwritten notes remains unknown' does not extinguish the document[s'] authenticity." *Hardin v. Dadlani*, 221 F. Supp.3d 87, 102 (D. D.C 2016) (quoting *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 329 (3d Cir. 2005)).

"Rule 901(a) does not require the document to be probative of a particular fact." *Lexington Ins.*, 423 F.3d at 329–330. Nor does it require the proponent to "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir.2001). All DB must do is introduce evidence sufficient "for a jury to conclude that the document 'is what its proponent claims it to be.'" *Lexington Ins.*, 423 F.3d at 330 (citation omitted). DB has done at least that.

Based on the foregoing evidence, a reasonable juror could conclude that one or more employees at Forrester Wehrle Homes, Inc., are responsible for the handwritten marks and alterations on the Design Basics plan books Forrester Wehrle Homes, Inc. ordered and admittedly kept in its

"possession." *See e.g.*, *Hardin*, 221 F. Supp.3d at 102 (employment application with the handwritten note, "blond girl" admissible against employer despite plaintiff's failure to "show who made the 'blond girl' notation," where the "application was in the defendants' possession . . . and there was ample evidence that [the defendant supervisor] said he wanted to hire blond girls").

Defendants' insistence that there are "other conceivable explanations" for the handwritten marks (Doc. 106, ID 4350), goes to the weight of this evidence, not its admissibility. *See United States v. Crosgrove*, 637 F.3d 646, 658 (6th Cir. 2011) (defendant's claim that his cohort "may have hidden (or even written)" a disputed letter "go to the weight the jury should afford the evidence," not authentication).[4]

I overrule defendants' objection and deny their motion to strike DB's access argument.

## Standard of Review

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex*, *supra*, 477 U.S. at 322.

The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323. Once the movant meets that burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit

---

[4]I note, in any event, that defendants fail to suggest, much less show, any reason to doubt the authenticity of the DB plan books. They likewise suggest no reason to believe anyone, other than someone associated with FWH, is responsible for the writings and alterations (paper clips, folded pages, etc.) on the plan book pages. The absence of a plausible alternative source for either the books, or the alterations, lends further support for overruling defendants' objection and denying their motion to strike.

admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

## Discussion

To prove copyright infringement, DB must demonstrate that it owns valid copyrights in the designs allegedly infringed, and that FWH copied them. *Feist Publications, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991).

Direct evidence of copying is rare. Most plaintiffs instead "establish an inference of copying" by demonstrating: (1) that the defendant had access to the plaintiff's copyrighted works; and (2) that the defendant's works are substantially similar to the copyrighted works. *Tiseo Architects, Inc. v. B & B Pools Serv. and Supply Co.*, 495 F.3d 344, 347 (6th Cir. 2007). I have already addressed similarity between the parties' designs in a previous order. (Doc. 129).

Here, I consider the preliminary questions: whether DB owns the copyrights in question; whether those copyrights are valid; and whether FWH had access to DB's home plan designs.

I note at the outset that copyrights registered within five years of publication "constitute prima facie evidence of the copyright and the facts stated within the certificate." 17 U.S.C. § 410(c). "A certificate of registration, if timely obtained," therefore creates a rebuttable presumption "both that the copyright is valid and that the registrant owns the copyright." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *see also Monogram Models, Inc. v. Industro Motive Corp.*, 448 F.2d 284, 286 (6th Cir. 1971).

## A. Ownership

First, although DB produced certificates of copyright registration for all eighteen of the

allegedly-infringed plans, FWH notes that plaintiff does not enjoy a presumption of ownership because the copyrights are registered in the name of Design Basics, Inc., not Design Basics, LLC. Moreover, according to Gugliotta's research, Design Basics, Inc. never recorded a transfer of its ownership interests to Design Basics, LLC at the United States Copyright Office. *See* 17 U.S.C. § 205(a).

Neither defect is fatal.

"Copyrights, like other property rights, may be transferred from the owner to another entity." *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 963 (8th Cir. 2005) (citing 17 U.S.C. § 201(d)). DB argues it became the owner of the former company's copyrights not by "instrument of conveyance" recorded at the Copyright Office, but by "operation of law," as permitted under 17 U.S.C. § 204(a).

"Cases dealing with copyright transfers by operation of law are scarce." *Design Basics, LLC v. DeShano Companies, Inc.*, 2012 WL 4321313, *4 (E.D. Mich.); *see also Taylor*, *supra*, 403 F.3d at 963 (collecting cases). Those that address the issue "generally concern transfer by operation of state law, often arising from corporate mergers or dissolutions." *Id.* (citing *Soc'y of the Holy Transfiguration Monastery v. Gregory*, 689 F.3d 29, 41 (1st Cir. 2012)); *see also e.g.*, *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 719, 721 (9th Cir. 1984) (copyright transfers from one corporation to another through a merger was a valid transfer of ownership).

"Such cases . . . focus on whether the author of the transfer provided express or implied consent to such change of ownership." *Soc'y of the Holy Transfiguration*, 689 F.3d at 41. If it did, the transfer is considered effective, meaning that "a transfer by operation of law is a voluntary transfer done on the part of the copyright owner to another." *Id.*

In affidavits attached to its motion for summary judgment, plaintiff explains that Design Basics, Inc. did, in fact, "voluntarily transfer" its copyrights to Design Basics, LLC.

Business partners Myles Sherman and Patrick Carmichael purchased Design Basics, Inc. in 2009, and in the process, created DBI Holdings, a Nebraska limited liability company. The partners merged the companies and transferred the corporation's assets–including "*all* . . . copyrighted works in which Design Basics, Inc. had an ownership interest"–to the surviving LLC. Following the merger, they renamed DBI Holdings "Design Basics, LLC," "the plaintiff entity in the above-captioned case." (Doc. 83-2, ID 2876-77).

DB may not be the presumptive owner of copyrights registered in the name of Design Basics, Inc., but "there is no genuine dispute" that it inherited the corporation's assets through merger.[5] *See* Fed. R. Civ. P. 56(a). And under Nebraska law, "[a]ll property . . . and every other interest belonging to . . . any . . . business entities, as merged or consolidated" are "deemed to be transferred to and vested in the surviving or new limited partnership without further act and deed." Neb. Rev. Stat. § 67-248.02(d)(5). This means the "merger transferred the copyrights owned by Design Basics, Inc. to Design Basics, LLC." *DeShano*, *supra*, 2012 WL 4321313 at *5 (reaching the same conclusion).

Gugliotta did not find a record of the transaction at the United States Copyright Office because Design Basics, Inc. did not have to file one. *See* 17 U.S.C. § 205(a) ("Any transfer of copyright ownership . . . *may* be recorded at the Copyright Office" (emphasis added)). Indeed, the transfer of copyright ownership "by operation of law" is an express exception to the requirement that such transfers must ordinarily be in writing. *See* 17 U.S.C. § 204(a) ("A transfer of ownership, other

---

[5]I note an inconsistency between FWH's claim that Sherman and Carmichael acquired Design Basics, Inc. to go trolling with its copyrights (in which they had, presumably, a lawful interest) and its argument here, disclaiming that DB had such an interest.

than by operation of law, is not valid unless an instrument of conveyance or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude entry of summary judgment," *Anderson*, 477 U.S. at 248, and in view of plaintiff's corporate history, a failure to record the transfer of ownership is not one of them. *See Lone Ranger Television*, 740 F.3d at 721 (rejecting a similar argument).

DB has carried its burden to demonstrate that it owns copyrights in the allegedly-infringed designs. I therefore grant plaintiff's motion for summary judgment on the issue of ownership.

### B. Validity

"The test for copyright validity is whether a work is the result of 'independent creation,' which, 'in turn means that a work must not consist of actual copying,'" *In Design v. Lynch Knitting Mills, Inc.*, 689 F. Supp. 176, 178 (S.D. N.Y. 1988) (quoting *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir. 1980)), and must "possess[] at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. Works "in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent . . . are incapable of sustaining a valid copyright." *Id.* at 359.

Defendants must have missed this point, because the arguments they characterize as going to the "validity" of DB's copyrights have more to do with copyright registration and scope than they do with originality–the "*sine qua non* of copyright" validity. *Id.* at 348.

Nevertheless, I address each in turn.

### 1. Deposit Materials

FWH first contends DB is "not entitled to a presumption of validity arising from its copyright registrations because . . . DB failed to submit a copy of the deposit materials for each work." (Doc.

87, ID 3349). This argument stems from the registration requirement in § 411(a).

A plaintiff cannot enforce his rights under the Copyright Act "until preregistration or registration of the copyright has been made in accordance with this title." 17 U.S.C. § 411(a). Registration or preregistration under § 411(a) is a non-jurisdictional "threshold requirement[] that claimants must complete . . . before filing a lawsuit." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010). Those who neglect to register or preregister their copyrighted works before filing suit fail state an infringement claim as a matter of law. *Cruz v. RCA Record Label*, 2015 WL 5023121, *3 (M.D. Tenn.)

To register a copyright "in accordance with this title," one must deliver to the Copyright Office a deposit (i.e., a copy) of the work, "together with the application and fee specified by sections 409 and 708." 17 U.S.C. § 408(a). FWH posits that DB must not have filed the requisite copies at the time it registered its designs because, again, according to Gugliotta "the deposit materials in many instances are no longer on file" at the United States Copyright Office. (Doc. 88-1, ID 3439; Doc. 87, ID 3352). Defendants therefore reason that DB pursued this action without proper registration and that its copyrights are, as a result, invalid.

Defendants are mistaken.

First, the factual premise for their argument is suspect.

The Copyright Office generally retains deposit copies "for the longest period considered practicable and desirable by the Register of Copyrights and the Librarian of Congress," 17 U.S.C. § 704(d), which in Gugliotta's experience is "at least five years." (Doc. 88-1, ID 3439 n.5). "After that period," the Register of Copyrights and the Librarian of Congress have "joint discretion . . . to order their destruction or other disposition." 17 U.S.C. § 704(d).

Most of DB's copyrights are twenty to thirty years old–well past the estimated five-year retention period. And I can presume that the original registrant (Design Basics, Inc.) filed all necessary application materials because the Copyright Office ultimately issued certificates of registration for these designs approximately twenty to thirty years ago. *See* 17 U.S.C. §§ 408(a), 410(c). Taking these facts as true, the most likely reason the deposit copies are, in "many instances . . . no longer on file" is not because the original registrant never filed them, but because "the Register and the Librarian . . . order[ed] their destruction or other disposition" following the minimum five-year retention period. 17 U.S.C. § 704(d).

Second, the conclusion defendants' draw from their unlikely premise is incorrect; errors in copyright registration do not render a copyright invalid.

By focusing on the deposit requirements, defendants "conflate the statutory formality of registration with the burden of proving the content of the allegedly-infringed work." *Enter. Mgmt. Ltd. v. Warrick*, 717 F.3d 1112, 1119 (10th Cir. 2013). "The two are separate issues." *Id.*

"Copyright registration is not a prerequisite for copyright protection"–that is, for the existence of an underlying copyright. *Id.* (citing 17 U.S.C. §§ 102, 408(a)). An author holds a valid copyright in his work from "the moment an original idea leaves the mind and finds expression in a tangible medium, be it words on a page, images on a screen, or paint on a canvas." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) (citation and brackets omitted); *see also* 17 U.S.C. § 102(a). And the validity of such copyright does not turn on whether the author has also completed the "threshold requirement[]" for filing suit in federal court.[6] *Reed Elsevier*, 559 U.S. at

---

[6]The Sixth Circuit has likewise embraced "the unremarkable proposition that although an action for infringement cannot be enforced until § 411's filing requirements have been satisfied, copyright protection extends retroactively to the time the artist creates the work." *Dice Corp. v.*

166.

On the contrary, "Congress made sure . . .that the registration system did not extinguish the automatic creation and recognition of copyrights" by explicitly declaring that "registration is not a condition of copyright protection." *La Resolana Architects, PA v. Clay Realtors Fire Angel*, 416 F.3d 1195, 1199 (10th Cir. 2005) (quoting in part 17 U.S.C. § 408(a)), *abrogated on other grounds by Reed Elsevier*, *supra*, 559 U.S. at 159 n.2. Registration is therefore "necessary only as a prerequisite to suing for infringement," not to demonstrate copyright validity. *Warrick*, 717 F.3d at 1119.

And DB has, in any event, satisfied the registration requirement. Its predecessor Design Basics, Inc. applied for and received certificates of copyright registration for all eighteen designs either as "pictorial, graphic, and sculptural works," 17 U.S.C § 102(a)(5), "architectural works," 17 U.S.C. § 101, or both. Plaintiff is therefore within its rights to sue FWH in federal court. *See* 17 U.S.C. § 411(a).

DB also submitted copies of all relevant deposit materials in support of its motion for summary judgment, leaving no question that "the underlying [designs] are in fact the [designs] for which the certificates of registration are issued." *Cf. Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F. Supp.2d 1027, 1039 (D. Alaska 2013). This is simply not a case in which "it is impossible for the Defendants (or the Court) to compare whatever works may have been registered by the Copyright Office to the allegedly infringing products." *Lanard Toys, Ltd. v.Novelty, Inc.*, 2007 WL 2439505, *6–7 (C.D. Cal. 2006).

Gugliotta's claim that the deposit materials are, "in many instances . . . no longer on file"

---

*Bold Techs*., 556 F. App'x 378, 386 n.3 (6th Cir. 2014) (citing *Coles v. Wonder*, 283 F.3d 798, 801 (6th Cir. 2002)).

at the Copyright Office amounts to no more than a "scintilla of evidence" undermining DB's right to pursue an infringement action. *Anderson*, 477 U.S. at 252. It is not "evidence on which the jury could reasonably find for" defendants *id.*, and does not create a genuine issue of fact as to the validity of DB's copyrights.[7]

## 2. Designs Not Registered as "Architectural Works"

Taking up Gugliotta's point, FWH next contends that five of DB's designs are ineligible for protection under the Architectural Works Copyright Protection Act (AWCPA) because they were created before the AWCPA's effective date. This claim requires some unpacking.

Copyright law protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Works of authorship include "pictorial, graphic, and sculptural works," also referred to as PGS works. *Id.* at § 102(a)(5). "Until 1990, architectural works could be registered only as 'technical drawings' under the category" of PGS works. *Nat'l Med. Care, Inc. v. Espiritu*, 284 F. Supp.2d 424, 434 (S.D. W. Va. 2003).

Once awarded, a "copyright . . . gives its owner . . . the exclusive right 'to reproduce the copyrighted work' and 'to prepare derivative works based upon the copyrighted work.'" *Robert R. Jones & Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir. 1988) (quoting 17 U.S.C. § 106).

---

[7]FWH also insists that "DB has an obligation to ensure that the Copyright Office maintains copies of its deposit material." (Doc. 87, ID 3350). As far as I can tell, it doesn't. Defendants cite no authority for this proposition, which is an unlikely one given that the Act expressly grants the Copyright Office discretion to destroy and dispose of deposit materials. *See* 17 U.S.C. § 704(d). The sole authority I have found on point also suggests just the opposite: "neither the Copyright Office nor the Library of Congress wants to keep every copy of every work submitted to it. Moreover, it is not necessary for the institution of an infringement action for the deposit material to be retained by either the Copyright Office or the Library of Congress." Howard B. Abrams, 1 The law of Copyright §10:66 Retention of Deposits (Oct. 2017 Update) (footnote omitted).

"Anyone who violates this exclusive right infringes on the owner's copyright." *Espiritu*, 284 F. Supp.2d at 433.

But at the same time, the "power to prohibit unauthorized reproduction is inherently limited." *Nino Homes*, 858 F.2d at 277. It does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). "Only the original expression of an idea embodied within a copyrighted work is protected by copyright law," the idea itself is not. *Espiritu*, 284 F. Supp.2d at 433; *see also Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984) ("The 'idea' of a tower structure certainly is not copyrightable.").

Architectural plans are also "subject to certain qualifications peculiar to this form of work" based on the useful article doctrine. *Nino Homes*, 858 F.2d at 278 (citation omitted).

Section 113(b) of the Act "provides that a PGS copyright of a 'useful article,' such as a building, does not extend to the manufacture of the article itself." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 469 F. Supp.2d 1148, 1162 (S.D. Fla. 2006) *aff'd* 572 F.3d 1218 (11th Cir. 2008). Accordingly, "[u]nder the 1976 Copyright Act, an architect had *no exclusive right* to build structures depicted in his or her technical writings." Stuart E. Jones, *Copyright Protection of Architectural Works: My House is My Castle, but can I Protect it from Infringement?* 8 Intell. Prop. L. Bull. 1, 4 (2003). A "PGS copyright protected the underlying design from being copied, but it did not prevent the construction of a building based on those plans." *Oravec*, 469 F. Supp.2d at 1162.

This left architects little recourse against homebuilders who "cop[ied] a structure depicted in the plans, without copying the plans themselves." *Espiritu*, 284 F. Supp.2d at 435. "[A] building is not a 'copy' of the underlying plans, with the result that construction of the structure does not

constitute infringement." *Oravec*, 469 F. Supp.2d at 1162 (quoting 1 M. Nimmer & D. Nimmer, Copyright, § 2.08 (1990)).[8]

Things changed in 1990 with the enactment of the AWCPA, which extended copyright protection to "architectural works"–the "design of a building as embodied in any tangible medium of expression, including the building, architectural plans, or drawings." 17 U.S.C. § 101; *see also* 17 U.S.C. § 102(a)(8). Thanks to the 1990 amendment, the "holder of a copyright in an architectural plan" can now avail himself of two distinct protections: "one under the provision for an 'architectural work' under 17 U.S.C. § 102(a)(8), and another under the provision for a 'pictorial, graphical, or sculptural work' under 17 U.S.C. §102(a)(5)." *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 495 F.3d 97, 109–110 (1st Cir. 2006).

Defendants argue that five of DB's designs (the Kendall, the Sherburne, the Lancaster, the Carrington, and the Galvin) are ineligible for protection as architectural works because they were created before December 1, 1990–the effective date of the AWCPA. *See* AWCPA § 706, Pub. L. No. 101-650, 104 Stat. 5089, 5134 (1990). They therefore reason that "DB cannot prove it owns valid copyrights" in these designs. (Doc. 87, ID 3352).

I disagree.

DB concedes that predecessor Design Basics, Inc. created four of the plans (the Kendall, the Sherburne, the Lancaster, and the Carrington) before December 1, 1990. But plaintiff holds

---

[8]Likewise, "there was no protection for the copying of the building itself." Jones, *supra*, at 4. "For example . . . a person could go to a building, take measurements, make sketches, or otherwise record the building and replicate without obtaining permission from the original designer of the building." *Guillot-Vogt Assocs., Inc. v. Holly & Smith*, 848 F. Supp. 682, 686 (E.D. La. 1994).

copyrights in those designs as PGS works, not as architectural works. And "[t]he enactment of the AWCPA did not affect the scope of copyright protection afforded to architectural works registered only as technical drawings." *Espiritu*, 284 F. Supp.2d at 434; *see also Guillot-Vogt*, 848 F. Supp. at 686.

Moreover, plaintiff's claims are not limited to the alleged manufacture and sale of infringing homes. DB also accuses FWH of "publicly displaying," "scanning, copying, and/or reproducing unauthorized copies" of DB's designs, acts that violate the exclusive rights of a PGS copyright holder. (Doc. 58, ID 1227-29).[9]

As for the Galvin, DB first published that design on December 1, 1990, making it eligible

---

[9]In addition to damages for unauthorized copying, DB claims damages from the sale of homes that infringe on its PGS works copyrights, despite the "long line of case law supporting [the] position that a PGS copyright . . . did not prevent the construction of a building based on [the copyrighted] plans." *Oravec*, 469 F. Supp.2d at 1162. Plaintiff relies on the Sixth Circuit's decision in *Nino Homes*, a pre-AWCPA case holding that "where someone makes infringing copies of another's copyrighted architectural plans, the damages recoverable by the copyright owner include the losses suffered as a result of the infringer's subsequent use of the infringing copies," i.e., lost profits for the sale of infringing homes. 858 F.2d at 280. But *Nino Homes* does not necessarily guarantee DB lost-profits damages in the instant case.

For one, *Nino Homes* aimed to fix a problem that now no longer exists. A modern-day PGS works copyright holder can prevent the construction of a building based on her designs by separately registering them as architectural works. Unlike the *Nino Homes* plaintiff, who could register his design only as a PGS work, DB had the option to seek architectural-works protection, but, for a number of its designs, failed to do so.

For another, the *Nino Homes* court expressly "limited" its holding to the facts presented there: "our decision rests in large part on the convincing evidence that [defendants] directly copied the Aspen plans themselves and did not merely duplicate the house." *Id.* at 280 n.5. "The same result would not necessarily obtain if the alleged infringer merely made houses which were substantially similar to those depicted in the copyrighted plans." *Id.* If FWH's homes are "merely . . . substantially similar" to DB's designs, and there is no evidence that defendants "directly copied" them, *Nino Homes* may be inapposite. I leave this question for the damages stage, assuming we reach it.

for registration as both an architectural work and a PGS work, *see* 37 C.F.R. § 202.11(d)(3) (excluding designs published *before* December 1, 1990, from AWCPA protection), although plaintiff apparently only registered the design as the latter, and not the former. (*See* Doc. 83-19).

The same goes for Shannon, the Monte Vista, the Harrisburg, the Chandler and the Ambrose. Regardless of eligibility, DB submitted certificates of registration demonstrating that it registered these designs as PGS works, but offered nothing to prove that it also registered them as architectural works. (*See* Docs. 83-6, 83-13, 83-16, 83-17, 83-20, 83-21).[10]

Still, "[w]hether the nature of the . . . drawings is architectural, technical, or otherwise, they can be the subject of copyright protection as [PGS] works under 17 U.S.C. § 102(a)(5) if the other requirements of the Act are satisfied." *Guillot-Vogt*, 848 F. Supp. at 687. And as I understand plaintiff's complaint, DB is pursuing infringement claims based on defendants' alleged misuse of the Kendall, the Sherburne, the Lancaster, the Carrington, the Galvin, the Shannon, the Monte Vista, the Harrisburg, the Chandler, and the Ambrose exclusively as PGS works. "Consequently, defendants' argument that the drawings are not within the scope of copyright because they are not architectural [works] is without merit." *Guillot-Vogt*, 848 F. Supp. at 687.

DB is not at fault for failing to satisfy the "threshold requirement" of registering these designs

---

[10] "An author seeking to register a work under both categories must submit separate registrations." *Attia v. Soc'y of New York Hosp.*, 201 F.3d 50, 53 n.3 (2d Cir. 1999); *see also* 37 C.F.R.§ 202.11(c)(4) ("Where dual copyright claims exist in technical drawings and the architectural work depicted in the drawings, any claims with respect to the technical drawings and architectural work must be registered separately."). To identify the copyrighted work as either a PGS or architectural work, I consult the "nature of authorship" section of the certificates of registration. *See Axelrod & Chervney Architects, P.C. v. Winmar Homes*, 2007 WL 708798,*3–5 (E.D. N.Y.) (explaining that "the [Copyright] Office's practice has always been to look to the 'nature of authorship' statement" in the registration application to determine "the general character or the type or category of the work being registered" (citation omitted)).

as architectural works "before filing a lawsuit." *Reed Elsevier*, 559 U.S. at 166.

### 3. Originality

Lastly, FWH urges me to deny DB summary judgment on validity because "none of DB's plans are original or creative." (Doc. 87, ID 3352-53). I disagree.

"To garner copyright protection, a particular work must be original, meaning 'that it possess at least some minimal level of creativity.'" *Design Basics I*, 2017 WL 5467152 at *4 (quoting *Feist*, 499 U.S. at 345). "Because DB holds certificates of copyright registration" in the allegedly-infringed works, "I presume its designs satisfy the 'extremely low' creativity threshold for originality." *Id.* (quoting *Feist*, 449 U.S. at 345). Here too then, "the burden shifts to the defendants to rebut this presumption of validity." *Architects Collective v. Pucciano & English, Inc.*, 247 F. Supp.3d 1322, 1337 (N.D. Ga. 2017) (citation omitted).

I spoke at length about the nature of original expression in architectural works in my earlier order requesting supplemental briefing:

> Copyright protection can extend to the 'overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.' Nor does protection extend to the 'standard configurations of spaces as well as common windows, doors, and other stable building components.'

*Design Basics II*, 2017 WL 5444569 at *3 (quoting 17 U.S.C. §101; also quoting *Lennar Homes of Texas Sales and Marketing, Ltd. v. Perry Homes*, LLC, 117 F. Supp.3d 913, 934 (S.D. Tex. 2015)).

"Where the defendant challenges the originality of copyrighted material, the presumption of validity will not be overcome unless the defendant offers either (1) proof that the product was copied from other works or (2) 'similarly probative evidence as to originality.'" *Lennar Homes*, 117 F.

Supp. 3d at 930 (quoting *Masquerade Novelty, Inc. v. Unique Indus.*, 912 F.2d 663, 668–69 (3d Cir. 1990)). FWH offers neither.

Defendants' argument on originality, in its entirety, states:

Design Basics['] residential designs do not contain protected original individual features nor are the total composition/plan/exterior appearances of each design protected unique expressions that would comply with the required component of 'original expression.' This is because the models 'are standard and customary residences composed of standard features/materials/assemblies in existence and available to designers/builders/homeowners for several decades but incorporate current technology that comply with industry standards, building codes, manufacturer recommendations and expectations as well as satisfy desired function and efficiency construction plus cost containment for builders.'

(Doc. 87, ID 3353 (alterations and record citations omitted)).

Setting aside that this assertion is premised on portions of an expert report I previously excluded as inadmissible,[11] the bigger problem with FWH's argument is that it says both everything and nothing: None of DB's designs are copyrightable because all are "standard and customary residences," consisting of "standard features/materials/assemblies" generally "available to designers/builders/homeowners" and dictated by "industry standards, building codes, manufacturer recommendations and expectations as well as . . . efficiency" and "cost containment." (*Id.*).

This conclusory, run-on claim does not engage with any of the eighteen "standard and customary residen[tial]" designs in dispute, specifically identify any of their "standard features/materials/assemblies," or explain how those "features/materials/assemblies" are in fact dictated by "industry standards, building codes, manufacturer recommendations . . . efficiency" or

---

[11]FWH quotes the portions of Kraly's report that I excluded because Kraly's belief that plaintiff's designs "do not merit copyright protection is a legal conclusion." *Design Basics I*, 2017 WL 5467152 at *4 (citation omitted). Unlike Kraly, defense counsel is well-positioned to advocate for specific legal conclusions in defendants' brief opposing summary judgment. I therefore consider counsel's legal arguments without resorting to Kraly's report.

"cost containment," as opposed to creative thoughtful design.

The same goes for defendants' claim that "DB's plans are merely derivative works and do not qualify for copyright protection." (Doc. 87, ID 3355).

A derivative work is a design plan based on a preexisting plan for which copyright protection extends "only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103(b). FWH identifies only one such derivative work, the Crimson Creek plan, which it characterizes as "virtually identical to joining two" units of the Kirby Farms plan, provided that the viewer ignore "a few exterior aesthetic differences." (*Id.*).

Defendants do not explain what these "few exterior aesthetic differences" are, how they fail to qualify the Crimson Creek for protection as a derivative work, or how this point is relevant, given that DB holds copyrights in both the original, and derivative designs, and accuses FWH of copying both. *See Dorchen/Martin Assoc., Inc. v. Brook of Cheboygan, Inc.*, 2012 WL 4867608, *5–6 (E.D. Mich.).[12]

_____

[12]DB interprets defendants' derivative-works complaint as one about its failure to properly register the Crimson Creek plan, rather than one about lack of originality. Because this is a better argument than the one defendants actually made, I address it: Section 409 of the Copyright Act requires applicants seeking to register derivative works to "identif[y] . . . any preexisting work or works that it is based on or incorporates" and provide "a brief, general statement of the additional material covered by the copyright claim being registered." 17 U.S.C. § 409(9). FWH concedes it failed to name the Kirby Farms plan as source material when it applied to register the Crimson Creek plan. Still, this does not invalidate the Crimson Creek registration because "[t]he issue raised by § 409(9) is whether and to what extent the derivative design incorporates elements designed by someone else." *See Dorchen/Martin.*, 2012 WL 4867608 at *5 (quoting *Frank Betz Assoc., Inc. v. O.J. Clark Const., LLC*, 2010 WL 2253541, *11 (M.D. Tenn.)). "Where the . . . Plaintiff created derivative designs based on its own original designs, 'the concerns that § 409(9) raises are not implicated.'" *Id.* (quoting *Frank Betz*, *supra*, 2010 WL 2253541 at *11)). Because DB utilized its own Kirby Farms plan to create the Crimson Creek plan, "[i]ts failure to inform the Copyright Office of this information did not deprive [the

"Of course [as] the party seeking summary judgment," DB "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. But DB has done that. Plaintiff's certificates of copyright registration are presumptive proof of originality, which defendants may rebut only by going "beyond the pleadings" and designating "specific facts showing there is a genuine issue for trial." *Id.* (citation omitted).

Rule 56 requires me to "'resolve any factual issues of controversy in favor of the non-moving party' only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990) (citation omitted). FWH has not averred to any such facts.

Beyond that, the suggestion that a presumptively original architectural or PGS work is in fact, not original because its elements are entirely "dictated by functional demands" finds little support in the case law. *Lennar Homes*, 117 F. Supp.3d at 931. Defendants do not "cite a single case finding a copyright invalid on these grounds" and, evidently, neither could at least one other district court examining the same issue. *See id.*

The only precedent FWH directs me to is *Sari v. America's Home Place, Inc.*, 129 F. Supp.3d 317 (E.D. Va. 2015), wherein the court found originality lacking because the plaintiff in that case paid the designer "$500 to copy an existing, apparently quite common, floor plan." *Id.* at 326. *Sari* is inapposite here, where defendants have not proffered evidence that DB copied its plans from

Office] from fully evaluating its application," and plaintiff is entitled to enforce its rights in both works in federal court. *Id.* at *6.

"existing . . . common" sources. *Id.*[13]

"Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and, are not enough to defeat a well-supported motion for summary judgment." *Pearce v. Faurecia Exhaust Sys., Inc.*, 529 F. App'x 454, 458 (6th Cir. 2013). Because defendants offer nothing more than that, I grant DB's motion for summary judgment with respect to its ownership of valid copyrights in the eighteen designs at issue, including the Kendall, Sherburne, Lancaster, Carrington, Galvin, Shannon, Monte Vista, Harrisburg, Chandler, and the Ambrose exclusively as PGS works.

## C. Access

Finally, the remaining issue: FWH's alleged access to the protected works.

"Access is essentially hearing or having a reasonable opportunity to hear" or in this case, to see, "the plaintiff's work and thus having the opportunity to copy." *Murray Hill Publications, Inc., v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004) (brackets and citation omitted). "Access may not be inferred through mere speculation or conjecture. There must be a reasonable possibility of viewing the plaintiff's work–not a bare possibility." *King Records v. Bennett*, 438 F. Supp.2d 812, 846 (M.D. Tenn. 2006) (citation omitted).

As I noted earlier, defendant Forrester Wehrle Homes, Inc., (FWHI) ordered a series of DB plan books from plaintiff's predecessor in interest, Design Basics, Inc., between 1993 and 2003–compelling evidence that FWHI had more than "a bare possibility"of viewing, and copying, the designs featured in those books.

---

[13]The *Sari* court also invalidated the plaintiff's copyright in a derivative architectural work, but only after the *Sari* defendants explained why the ten unique elements in the derivative plan were "either unoriginal," because the designer "got the idea from someone or something else," or "not protectable under the AWCPA" due to their functional purpose. *Sari*, *supra*, 129 F. Supp.3d at 327. Defendants in this case simply have not gone to the trouble to do the same.

However, DB offers no similar evidence demonstrating that FWHI had access to the designs that did not appear in the DB plan books it ordered, or that defendant Wehrle Development, Ltd. (WDL) had access to any of plaintiff's protected works.

### 1. FWHI Had Access to Sixteen Protected Works

To explain, I begin with a brief word about defendants' background.

Richard Wehrle founded the original home building company Forrester & Wehrle, Inc., in the 1960's and operated the business through the early 2000's. His sons, Jeffrey and Joseph Wehrle "carr[ied] on the family legacy" by establishing their own home-building companies. Jeffery incorporated FWHI in 1999, and Joseph formed WDL in 1997. (Doc. 87-2, ID 3365; Doc. 87-3, ID 3368). DB named each of these parties (with the exception of Richard's business) as defendants in the instant suit: Richard, Jeffrey and Joseph Wehrle as individual defendants, and FWHI and WDL as entity defendants.

According to DB's records, FWHI is the entity that purchased of all the Design Basics, Inc., plan books (including those ordered in 1993 and 1996, before Jeffery's business was incorporated), and licensed the Ashton and the Albany plans. Plaintiff's records also list Jeffery Wehrle as the customer contact for the business. (Doc. 83-25).

Just as important, these same records also show that sixteen of the eighteen designs at issue (with the exception of the Tollefson and Kirby Farms plans) appeared in the DB plan books FWHI ordered. (*See* Doc. 83-26).[14] Again, defense counsel acknowledged his "clients" still had portions

---

[14]I note this is not at all plain on the face of exhibit 23 to plaintiff's motion for summary judgment–a chart identifying the plan books FWHI ordered from Design Basics, Inc. and listing the plans that appeared in each of the books. (*See* Doc. 83-26). Instead of identifying the designs on the chart by name (i.e., the "Newlin" or the "Kirby Farms") plaintiff identifies them with four-digit numbers, which the reviewer must then match with the four-digit number appearing on a

of these plan books in their "possession" as of June 2016–years after FWHI ordered them.

While counsel's reference to his "clients" is arguably ambiguous (as he represents all named defendants), evidence elsewhere in the record confirms that those unidentified "clients" likely included FWHI, not only because the company ordered the DB plan books directly from Design Basics, Inc., but because a former FWHI employee recognized them. Specifically, Thomas Flowers, who designed for FWHI between 1998 and 2006, and worked for the company as an independent contractor thereafter, testified that he recalled seeing at least one of the DB-brand plan books Jeffrey allegedly ordered "in the library . . . [or] like a conference room" at the firm's office. (Doc. 99-1, ID 4027-30).

Taken together, this evidence "clearly shows" that FWHI had a reasonable opportunity to view, and therefore to copy, the sixteen home designs featured in the DB plan books. *See Nino Homes*, 858 F.2d at 277 ("The photocopy found in the firm's files clearly shows that the architects had an opportunity to view [the plaintiff's] design."). DB thus carried its burden to demonstrate FWHI had access to these protected works.

Defendants' arguments to the contrary are unpersuasive.

First, they point to Jeffery Wehrle's affidavit, which disputes plaintiff's business records.

---

particular design's certificate of registration. For example, the Newlin corresponds to 2951, and 2951 also appears as the "Plan No." on the Newlin's certificate of registration. (*Compare* Docs. 83-26, 83-10). This system is not intuitive. And plaintiff did not explain it to me–I discerned it myself after a careful review of the record. DB admits the Tollefson did not appear in the plan books FWHI purchased, but says nothing about the Kirby Farms plan. There is, however, a four-digit number on the chart (8053) which is one digit off from a match with the four-digit "Plan No."on the Kriby Farms' certificate of registration (8093). No matter. I am not obligated to assume this is a typographical error, nor am I obligated to interpret ambiguous evidence in plaintiff's favor, particularly given that plaintiff is the moving party. Plaintiff has not established the Kriby Farms design appeared in the DB plan books, and thus has not established that FWHI had access to this design.

Wehrle attests that he "never purchased anything from DB," and does not know "who may have ordered" the DB plan books. (Doc. 87-2). He acknowledges "[c]ertain copies of DB's plan books have been present" in FWHI's office, (*id.* at 3366), but posits that this is only because Design Basics, Inc. sent FWHI unsolicited mail advertisements. Jeffery maintans, further, that he never "receive[d]," "review[ed]," or "utilize[d]" the plan books, and "[n]one of [FWHI's] designers have ever utilized a DB plan book within the scope of their employment." (*Id.*).

But his affidavit proves too much, to no end. "Access merely means an opportunity to view the protected material"; it does not require proof that a particular individual reviewed or utilized the plaintiff's protected works. *Nino Homes*, 858 F.2d at 277. "[T]he copyright holder need not necessarily prove access on the part of the alleged infringer, so long as there is proof that the person who composed the allegedly-infringing work had access to the copyrighted material." *Id.*

If FWHI's designers had a "reasonable *opportunity*" to view DB's plan books, *Murray Hill*, *supra*, 361 F.3d at 316 (emphasis added), then DB has established access. Plaintiff need not prove that they actually used the plan books to draft FWHI's designs. Thus, Wehrle's "testimony that [he] never heard of Plaintiff or reviewed the plan books is not conclusive." *DeShano*, *supra*, 2012 WL 4321313 at *15 ; *see also e.g.*, *Ronald Mayotte & Assoc. v. MCG Bldg. Co.*, 885 F. Supp. 148, 152 (E.D. Mich. 1994) ("Plaintiffs . . . established the likely existence of access" based on their distribution of brochures in the area and because their model home was two miles away from the allegedly-infringing home, "despite the [defendant business owner's] affidavit . . . stating that he never viewed Plaintiffs' plans.").

Relatedly, defendants also maintain that FWHI's mere "corporate receipt" of DB's plan books is insufficient to prove "possession by another [unknown] corporate employee who allegedly

infringed the work[s].” *Blige*, 558 F.3d at 492–93. Several Circuit Courts, including the Sixth, “have rejected ‘bare corporate receipt’ as sufficient proof of access, requiring plaintiffs to introduce some evidence that it was ‘reasonably possible that the paths of the infringer and the infringed work crossed.’” *Id.* at 493 (citations omitted, collecting cases).

Yet here, DB’s evidence does show a reasonable possibility “that the paths of the infringer and the infringed work crossed” at FWHI. Even if Jeffery Wehrle did not order the DB plan books, he agrees “[c]ertain copies of DB’s plan books have been present” in FWHI’s office–the same plan book materials Flowers recognized from the “library” or the “conference room,” and the same that defense counsel confirmed have been in his “clients’ possession” though the start of this litigation.

What is more, the DB plan book pages still in FWHI’s “possession” featured handwritten notes, marks, paperclips and corner folds–convincing proof that someone, at some point, consulted them. For example, a notation on the page featuring DB’s “Bennett” design (which is not among the eighteen plans in dispute), remarks, “Great plan like Freeport.” (Doc. 98-13, ID 3856). And a post-it note paced at the center of the “Bristol” plan page (also not at issue) declares, “nice plan, open kitchen area, good master.” (*Id.* at 3857). These remarks corroborate Flowers’ claim that FWHI design employees had ready access to the DB plan books.

In sum, DB has shown FWHI’s access to the sixteen protected works went beyond “bare corporate receipt.” *Cf. Blige*, *supra*, 558 F.3d at 492–93. I therefore grant plaintiff’s motion for summary judgment on the issue of FWHI’s access to these sixteen plans.

## 2. FWHI Did Not Have Access to the Tollefson or Kriby Farms Plans

Of course, that still leaves the two designs not featured in the plan books FWHI ordered: the Tollefson and the Kriby Farms plans.

Plaintiff argues defendants had access to these designs nonetheless because DB "has maintained a huge website since 1996, which display[s] elevations and floor plans for each of the [designs] at issue," including the Tollefson and the Kirby Farms. (Doc. 83, ID 2869). But standing alone, the fact that plaintiff posted its protected works online demonstrates "nothing more than the bare possibility that Defendants might have seen the plans," *DeShano*, *supra*, 2012 WL 4321313 at *13, not proof that they had the opportunity to copy them.

Among the courts that have considered whether "an Internet presence may satisfy the access requirement for an infringement claim," the "weight of authority, and . . . the more persuasive analysis, rejects this argument." *Design Basics, LLC v. Lexington Homes, Inc*., 858 F.3d 1093, 1107 (7th Cir. 2017) (footnote omitted, collecting cases). "[E]stablishing a bare possibility of access is not enough, and a plaintiff must prove that a defendant had a reasonable possibility of viewing the work. Applying this doctrine, courts have consistently refused to treat internet publication alone as sufficient to engender this requisite possibility." *Id.* (quoting *Cain v. Hallmark Cards, Inc.*, 2016 WL 3189231, * 5 (M.D. La.) (ellipsis omitted)). In this case, I join them.

Because DB has not shown that FWHI had a reasonable opportunity to view the Tollefson and Kirby Farms plans, I deny its motion for summary judgment on the issue of FWHI's access to these designs.

### 3. WDL Did Not Have Access to the Protected Works

DB's access argument fails against Joseph Wehrle's business, WDL, for much the same reason. Plaintiff points to nothing more than its internet presence as proof that WDL had a "reasonable opportunity" to see, "and thus . . . to copy" plaintiff's designs. *Murray Hill*, 361 F.3d at 316 (citation omitted).

33

Unlike FWHI, WDL did not have a history of ordering products from plaintiff, or from plaintiff's predecessor in interest, Design Basics, Inc. And unlike Jeffrey, Joseph attests that "copies of DB plan books," even unsolicited copies, "have never been . . . present" in WDL's office. (Doc. 87-3). DB offers no testimony from WDL employees to contradict him.

Instead, plaintiff falls back on the admission from defense counsel Stoffers–that the DB plan book remnants were in his "clients' possession," up until June 2016, and implies that the plural "clients" must have included WDL. But plaintiff never clarified this point in discovery, and proffers no evidence that Jeffery's business shared the plan books, or any resources, such as employees or office space, with Joseph's business. *See Blige*, 558 F.3d at 491 ("Although evidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant, access may not be inferred through mere speculation or conjecture."(citation omitted)).

Speculation and conjecture do not support an inference of access. Accordingly, I deny DB's motion for summary judgment on the issue of access with respect to WDL.

### Conclusion

It is, therefore,

ORDERED THAT:

1.   DB's motion to exclude defense expert Gugliotta's report (Doc. 84), be, and the same hereby is, granted in part and denied in part, as provided herein;

2.   FWH's objection to the affidavit of James Rogers and the exhibits attached thereto, and its motion to strike plaintiff's argument based thereon (Doc. 100), be, and the same hereby is, overruled and denied;

3. DB's motion for summary judgment with respect to its ownership of copyrights in, and defendants' access to, the Ashton and Albany designs (Docs. 83, 98) be, and the same hereby is, denied;

4. DB's motion for summary judgment with respect to its ownership of valid copyrights in the eighteen designs at issue (Doc. 83), be, and the same hereby is, granted as provided herein, including the Kendall, Sherburne, Lancaster, Carrington, Galvin, Shannon, Monte Vista, Harrisburg, Chandler, and the Ambrose exclusively as PGS works;

5. DB's motion for summary judgment with respect to FWHI's access to the copyrighted works (Doc. 83) be, and the same hereby is, granted as to the Kaiser, Kendall, Shannon, Sherburne, Newlin, Monte Vista, Lancaster, Franklin, Harrisburg, Chandler, Glavin, Carrington, Ambrose, Gabriel Bay, Tilmer's Run, and the Crimson Creek plans;

6. DB's motion for summary judgment with respect to FWHI's access to the copyrighted works (Doc. 83) be, and the same hereby is, denied as to the Tollefson and Kirby Farms plans; and

7. DB's motion for summary judgment with respect to WDL's access to the copyrighted works (Doc. 83) be, and the same hereby is, denied in full.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge